Mid-Century Insurance Company Excuse me, would you identify yourself? Excuse me. Robert Ludwig of the firm Ludwig Robertson in Washington, D.C. Good morning, Your Honors. May it please the Court. Mid-Century appeals from a Rule 12b-6 dismissal based on an unprecedented application of collateral estoppel to successive insurers and also from the denial of its partial summary judgment motion based on a finding of bad faith against Wells Fargo as a matter of race due to collateral estoppel. And, yes, there was a finding of bad faith by the jury below as evidenced from the special verdict and the additional special verdict, which I'll go into. I'd like to Wait a minute. I'm really confused. There was no trial below in this case. I misspoke. Was there a summary judgment motion or there was only a 12b-6? There was a summary judgment motion in this case. About what? On the basis of a prior jury's finding in a separate case involving National Union v. Wells Fargo. With respect to the collateral estoppel, there simply is none in this case. As this Court held in Cordes v. Cameron, it's a narrow exception to the right of all parties to have their day in court. It requires two elements, privity and identity of interest. There is no privity. We're talking about separate insurers, mid-century v. National Union. But you're both in the shoes of the same party. Well, we are, and insurance law is clear. And the case cited by the district court, State Farm v. Salazar, is a classic, unremarkable case of subrogation where State Farm was held when its first student in the name of its insured could not later, after an adverse jury finding, then sue in its own name. That's no authority for this case. All the Court cited was a leap of logic without any insurance law that the same doctrine could be applied to a successive insurer. Now, Calchon Insurance, the leading one of the leading insurance treatises, distinguishes between the two. It cites Salazar for one point and says privity held to exist and cites a case that we've cited, Hartford v. Commerce Casualty, for the opposite cause. Is there any case holding in these circumstances that there isn't collateral estoppel and there isn't privity? There is not privity or collateral estoppel in the case of successive insurers. Is there any case still holding? Is there any case holding that where you have two successive insurers standing in the shoes of the same insured, and if there would otherwise be collateral estoppel, because your brief keeps bumping around from one to the other, but let's assume there would otherwise be collateral estoppel, that it wouldn't apply? Yes, clearly. It's in the couch. We cited it's Hartford v. Commercial Casualty, page 1 of our reply. That's direct insurance law. There is no authority whatsoever that would support this unprecedented holding. There were two separate counsel in the first case. Marty Fierstein represented MidCentury. They elected not to participate. They had no control over what we did on behalf of the National Union. It only came up later on, on appeal, when if this Court was going to rule in the National Union case that account opening was not relevant to ordinary care or good faith below, then ---- Yeah. I thought that you agreed to be bound by the result of that appeal. Only as to that narrow holding after trial. Up to that point, MidCentury had not participated. It did not control and ---- Essentially, this whole problem came about because somebody blew the notice of appeal in the other case. Is that really what happened? Yes. My office did, Your Honor. I did. Because if they hadn't, and if that case had gone to appeal, there was a stipulation that that would have been the end of this case, too. Yeah. I was induced by a young attorney who made me believe electronic rules changed the 10-day rule for appeal. And we regret that. There's likewise no identity of interest here. These are separate checks. No discovery is taken on these checks. Wells Fargo had not even identified the tellers or supervisors that handled those checks. It's sheer speculation on the part of the district court that the evidence would be the same. We don't have the documentary or testimonial evidence. But the problem ---- And ordinarily, that would definitely, it seems to me, would be right. And it is very odd to have an issue of preclusion as to a different set of incidents. But you haven't alleged anything different, not one thing. Well, certainly we have. What? We've alleged separate checks under UCC parlance, commercial code parlance in California. It is understood, as the bank even argued, that they are separate claims. But they say exactly the same thing as the other checks. But they get presented to different human beings, tellers and supervisors. We don't know what tellers may have reacted to them. They were improper. A jury found this to have ---- In the first trial, did every teller who had checked, who had cashed one of these checks testify? No. We don't know who the tellers were. These could be sharper tellers. And there's a separate problem here. The legal issue of account opening was barred by the district court in the National Union case. We had an expert whose testimony was included that ---- Yes, but that, although this hasn't been noted in the briefs, cuts directly against you because, well, because essentially there's a ---- quite aside from any factual overlap, there was a legal ruling against you as to which you would be precluded. You could be precluded on legal rulings. And if you're ---- except for the privity issue. The National Union was, but essentially ---- All right. Let's ---- but, again, there are two pieces that we're juggling at once. And so let's try and keep our eye on which one. Leaving out the privity problem, it seems to me that the fact that the ---- there was a legal ruling on the key question that you're concerned about would be issue preclusion, regardless of the fact that the facts may be different. You've obtained a legal ruling and you don't like it. That gets circular. Basically, you're assuming that there's privity. No, no. I'm not assuming there's privity. I'm saying if there's privity. If there's privity. In other words, the fact that there was a legal ruling against you. If there's privity, I agree, Your Honor. Yeah. All right. But there was not ---- So everything turns out to hinge, therefore, on whether there's privity and nothing else. Correct. I would, to that extent, that this is unprecedented. There's no case law supporting the case law is adverse. Why should we? Why should we say that there's not privity? I mean, not that they're ---- that this is unprecedented, but what ---- why does it make sense here? This Court has already ruled in the Cordes v. Cameron case that even parallel legal interests alone, whether identical or otherwise, are insufficient to establish privity. And the case you don't cite, which is the Headquarters case, says that in spades. But this is arguably different. Arguably, but there's no basis. And the legal world follows the Hartford v. Cameron decision, which is recognized in the treatise. There is no privity. I'd like to speak briefly, my time is winding down, to the UCC issue. Well, it doesn't matter. The UCC issue is completely irrelevant at this point. There either is or there isn't issue of preclusion. Then if there isn't, then you'll go back to the district court and you'll deal with the UCC issue.  All right. Well, let me try to attack it this way. Well, actually, at this point, let me reserve. I'm at the 2 minutes, 15 seconds. Thank you. Good morning, Your Honors. Tom Beebe from Wells Fargo Bank. May it please the Court. Let me just make a couple of observations. Regarding privity, this is really fundamental in California, that the insurer and the insured, in effect, are the same. Yeah, but you're trying to push it one step further than that. Did you have any case law supporting it? Yes, it's the same California case. Salazar covers exactly the opposite situation. Salazar talks about if the insured brings an action, then the insurer is bound, which is unremarkable. But what about a second insurer? We talk about math in the brief. Well, I understand that, but at least let's concede that there is no case, if there is no case. I haven't seen a closer case than that one. So if you like, the waterfront is two cases. We've got one in California that holds there is privity. We've got a district court case from Connecticut that holds the other way. That's a trial court decision. We're in California applying California law. I think the California case is entitled to considerably greater weight, and the California case makes sense. But the California case doesn't deal with two successive insurers, right? No. It just deals with the insurer and the insured vis-a-vis each other. That's right. And once you take that step, then the next step is inevitable, because you have the really fundamental documents. Except that when you're trying to preclude the insured, it's one thing. When you're trying to preclude an insurer who has different interests, or at least is a fundamentally different party, it could well be otherwise. Well, they're not fundamentally different. The insurer takes the insurer's rights, the insured's rights, as he finds them. If the insured released the claim, the insurer is stuck with that. If the insured waived subrogation claims in advance, the insurer is stuck with that. If the insured litigates the claim, same concept. If the insured litigates the claim and lost, the insurer is stuck with that. My point is that for all practical purposes, Wondery's Toyota brought the first case. Their insurance company did, standing in their shoes. The insurance company had the right under their policy to file the complaint, Wondery's Toyota versus Wells Fargo Bank. I don't know why they didn't. I think given a choice between a plaintiff who's a used car salesman and a plaintiff who's an insurance company, maybe I would have named the used car salesman. But they had that right. And whether they did or they did not, the legal effect is exactly as if Wondery's Toyota brought the first case. And if Wondery's Toyota, for all practical purposes, brought the first case, then anybody else who wants to come forward and step into Wondery's Toyota's shoes, and that's what the insurance company does, anybody who wants to come forward and step into Wondery's Toyota's shoes takes whatever rights Wondery's Toyota has as it fines them. Could MidCentury have intervened in the case to protect its rights? It certainly could have. There was nothing barring it from filing its complaints sooner. So if MidCentury doesn't want to be bound by the national union litigation, it could have protected itself by intervening or bringing its own suit? As I understand it, were they represented by the same? They were. Yes, they were represented by the same attorney. We have a tactical gambit of trying to split the claim for strategic purposes. I mean, hypothetically, if there were different lawyers, if they wanted to not be bound by national union, what could they have done? I don't know that you can think about it in terms of not being bound, but if somebody's talking about your claim, you want to be in the room when they're talking about it. So what they could do is presumably have it litigated at the same time, which would obviously make excellent sense from the standpoint of judicial administration. It makes no sense to have this case for March to August and then have two more months tried separately, identical checks, identical facts, identical arguments. So there's no reason we would want to discourage anybody or we would want to encourage anybody to litigate the same case twice. But I think MidCentury's remedy, if it wanted to have a say in the proceedings, would be to file its complaint and then consolidate it. Let's talk about the fact, putting the privity issue aside, that these are completely different incidents. I mean, for example, for all we know, although it's not in the complaint and this is a problem, but for all we know and discovery, you would find out that at the time of, and they're sequential too, they're not interspersed. So it is possible that the bank found out something at the end of the first sequence of events and before MidCentury came in that would have put it on notice that it didn't have before. It's possible. It's not in the complaint, but it's possible. I understand. Let me answer it two ways. First of all, when my colleague says, we don't know who those tellers were and things like that, he's just wrong. Trial Exhibit 25 from the National Union trial is a teller transaction report that lists all of the transactions for the time period August to November of 2001. It was marked as a trial exhibit because August was part of the National Union claim. But the same document went on to say who the tellers were and who the approvers were for the October-November transactions. So Mr. Ludwig knew every one of them. It's half the same people. Some of those people were asked about the October-November transactions in their depositions in the National Union case. So there's no surprise. But now let me answer your second question. Let me ask you this because this is very odd to me. Presumably, if Mr. Ludwig was representing both mid-century and National Union at all relevant times, then presumably, in effect, he had some duty to mid-century during the course of his representation of National Union, didn't he? So, you know, in effect, if there were different facts, he had some obligation to figure out what they were. That's right. And if he had a claim in mid-centuries, if he thought mid-century had a claim, he had an obligation to say that. He said before there were different lawyers earlier on. Pardon me? He said before that there were different lawyers. First of all, I'm very uncomfortable suggesting that, you know, identity of lawyers has much to do with anything. But he did say that there were different lawyers at the time of the earlier case. That was what I was wondering. Do you know whether he was the same lawyer all the time? Mr. Ludwig was representing National Union from day one. I know that Mr. Ludwig was in conversations with mid-century for some time before the National Union trial. But you don't know that he was their lawyer at that point. I don't know when that relationship began. But I know there was communication going on. But as far as you know, mid-century was aware of the existence of the other system. Certainly was. Absolutely was. But let me answer that hypothetical question of maybe we'd find something new. And I think we have to think about it like a statute of limitations defense. If the complaint pleads on its face, facts indicating that the claim is barred by statute of limitations, the plaintiff can't just say, don't dismiss my case, let me do discovery, and maybe I'll find some way to get around it. What the plaintiff has to do at the pleading stage is plead in good faith, facts which, if true, would establish that he can get around it. Similarly here. Is there any case law on this? I mean, this whole case is very interesting in many ways. Is there any case law on whether it's the complaint that determines issue of preclusion or what might be discovered or whether you have to go down the discovery route somewhat first to find out? No, it is the complaint. And we gave you two cases on that. There's the dual-deck antitrust case. And what it talked about in holding that Clyde Olstoppel applied is that the alleged conspiracy for the later time period is exactly what was alleged for the earlier time period. The plaintiff was not allowed to get past the 12b-6 motion to do discovery to see if maybe the complaint, the conspiracy that he failed to prove before had somehow evolved into something different for the later time period. The plaintiff was stuck with what he pled. There's something somewhat disturbing about that when you're dealing with completely different incidents. And the fact that if the first case had never happened, they would have had the discovery and they might have turned up something that was, in fact, different, such as an awareness because of the earlier sequence. Because here, intent and frame of mind would be all important with regard to the bag. Well, there's two answers to that. First, going back to the National Union case, the one check that we lost on, and we gave you this exhibit, it was Exhibit 210, the same teller took two checks at the same time. The jury found that we were in good faith. Well, I wasn't really thinking about the teller. I was thinking that somebody higher up at some point could have figured it out. I mean, somebody might someday have been doing an audit and said, hey, this looks peculiar. Now, we don't know whether that's true and there's no way they would know that either. Well, they did discoveries, as we talked about, that include the later cases or the later sequence of events. But, again, they haven't pled it. But our experience is, and they haven't pled that anybody higher in the bank figured this out, and they have no reason to plead that and survive. You are in the red. The last thing I'll say is regarding the statements that the jury found that Wells Fargo was in bad faith, no such finding. We failed to prove good faith. That does not mean the plaintiff proved it. But it wouldn't matter anyway, because there were more checks after that in the other case. And if something was going to be collateral estoppel, issue precluded, that would be issue precluded, too, because they'd All right. All right.  Thank you. Your Honor, I'm troubled that this legal issue of insurance law is rebounding down to a couple of factual points that are being misstated. Number one, Mr. Beebe well knows that a Marty Fierstein represented MidCentury for all times relevant until just before the appeal to this Court on our missed 10-day filing. Secondly, I did not know as Counselor of the National Union, even apart from what Mr. Fierstein knew, I've got the exhibit here and the bank's own supplemental extracts of record at page 53, a listing of checks going through August 1, 2001. That was the last National Union check. We never did discovery. But didn't he have access to all of the what didn't he have? I don't quite understand. He had a discovery. Whoever was representing. I had the power of discovery. I did not even have access to it. I didn't know who the tellers were. I didn't know who the supervisors were. I didn't know the bank's internal records, electronic or documentary, that related to those checks. Does that matter if there's a legal issue that this kind of negligence isn't actionable? Does it really matter what the facts are? That's account opening, Your Honor. Pardon me? That's account opening. We're talking about the taking for acceptance or for collection of checks. And those are separate time bombs, if you will. So are you essentially arguing for like that we should get one step further into this case before we decide on the other issue preclusion? I mean, you still could end up issue precluded. If you go and do the discovery, you don't turn up anything. You're going to still be issue precluded. So the real question, I mean, the very fine-cut question is do you get dismissed now or do you at least get discovery enough to see whether there's any factual difference that you can allege? In other words, what you're really looking for is an opportunity to do enough discovery to be able to amend your complaint to allege something different. Your Honor, I take your prior point. Before you get to issue identity, you have to first address privity. And Cordis's reasoning is dead on. All right. But when you keep wandering from one to another, it's not helpful. All right. For the moment, we're assuming privity. In order to answer my question, you have to assume privity. Okay. Let's assume it. Yes. Okay? Still, it's a different scene. We have two different things that are in the air here. One is the different insurance companies and the other is the different time periods. Let's put aside the different insurance companies. Let's focus on the different time periods. Let's assume this was national union all along, but it's a different time period. Would you get thrown out on day one or would you get discovery? That's really the question. I think it's the same party. Just like in the dual-debt case, you're thrown out regardless under ordinary principles. All right. So then we're back to what I said. It's about privity and nothing else. All right. I think the Court should compare the reasoning in Cordes, your own reasoning, if you will, with that of the district court in Connecticut. They are spot on. All right. Thank you. Thank you very much. Thank you for your honest time. Thank you.
judges: Schroeder, Silverman, Berzon